IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS W. LANG,

Petitioner, No. CIV S-05-0063 RRB GGH P

vs.

CHARLES HARRISON, ORDER AND

Respondent. FINDINGS AND RECOMMENDATIONS

________________________________/

Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action is proceeding on the amended petition filed May 23, 2005. Petitioner challenges his 2003 conviction for possession of a sharp instrument while confined in a state prison in violation of Cal. Penal Code § 4502(a). Petitioner was found guilty after a court trial. Pursuant to the Three Strikes Law, petitioner was sentenced to 25 years to life.

The amended petition raises one claim: insufficient evidence. After carefully considering the record, the court recommends that the petition be denied.

Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle,

138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions.  While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

The California Court of Appeal was the last state court to issue a reasoned decision denying petitioner's claims. Respondent's Lodged Documents. Accordingly, the court considers whether denial of the claims by the California Court of Appeal was an unreasonable application of clearly established Supreme Court authority. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision).

Factual Background

At the court trial, former Correctional Officer Guches was the only witness to testify against petitioner. On February 22, 2002, Officer Guches was assaulted by two inmates. RT at 16. As a result of the assault, Officer Guches suffered head injuries that caused him to suffer memory problems, anxiety and claustrophobia. RT at 16. The memory loss problems

involved difficulty remembering words. RT at 19.

On February 20, 2000, Officer Guches was employed at California State Prison-Sacramento working as the gym officer on the main yard. RT at 29. At about 12:30 p.m. he saw five inmates against the wall past the chapel, which is out of bounds. RT at 29. Petitioner, who was part of this group of inmates, threw a rock at another group of inmates. RT at 30. After this, Sergeant Hinrichs ordered that the inmates who were out of bounds should be taken to holding cells. RT at 32. Officer Guches and Officer Fields escorted the inmates to the sally port area. RT at 36-37. Officer Hinrichs was also in the sally port area. RT at 38. A sally port officer was also present. RT at 39.

Officer Guches put petitioner into holding cell 3. RT at 40. The procedure Officer Guches followed in placing petitioner in the holding cell was to first open the cell door and look inside, including at the ground, to make sure nothing was in it. RT at 41. He also looked at the wiring on the sides, door and top of the cell. RT at 41. Officer Guches followed this procedure because he had previously been reprimanded for not thoroughly checking a holding cell. RT at 42. In the previous incident, a weapon was found in a holding cell after Officer Guches placed the inmate in it, but they could not charge the inmate with possession of a weapon because the cell had not been thoroughly checked by Officer Guches. RT at 42.

The floor of petitioner's holding cell was grungy and dirty. RT at 105.

Petitioner was cooperative when placed in the holding cell. RT at 44. After Officer Guches placed him in the cell, he searched petitioner by having him show him his hands, open his mouth and show him the back of his ears. RT at 44. He then had petitioner take off his clothes and hand them to Officer Guches to be searched. RT at 44-45. Officer Guches did not make petitioner take off his boxer shorts. RT at 83. Instead, he had him pull them down so that he could conduct a visual inspection. RT at 83. After searching the clothes, Officer Guches handed them back to petitioner. RT at 46.

\\\\\

Officer Guches noticed that petitioner's boxer shorts were gathered in the front with a string. RT at 47. After he handed his socks back to petitioner, Officer Guches also noticed that petitioner spent longer than normal putting on his socks. RT at 47. It appeared that petitioner was fidgeting at the bottom of the cell. RT at 47.

After petitioner put his clothes on, Officer Guches asked him to step to the back of the cell. RT at 48. Officer Guches then unlocked the door and saw an object on the bottom of the cell. RT at 48. The object was an inmate manufactured weapon. RT at 51. The weapon was wrapped in cellophane plastic and had a knotted string tied around the sheath. RT at 52. The cellophane appeared white to Officer Guches. RT at 106. Three quarters or an inch of the blade was unwrapped. RT at 106. The blade was black. RT at 54. The object was approximately six inches long. RT at 55. Officer Guches kicked the weapon toward him and picked it up. RT at 48-49.

Prior to the time Officer Guches removed the weapon, petitioner said nothing to him about it. RT at 55. The only inmate near petitioner's cell was the inmate in the next holding cell over, cell 4. RT at 55. Officer Guches did not see the inmate in this cell toss anything into petitioner's cell. RT at 56.

For the defense, petitioner testified that on the day of the incident, after he went through the sally port he was made to wait in a spot for ten minutes. RT at 134. After ten minutes, Officer Guches asked him to enter the holding cell. RT at 135. After he got in the cell, Officer Guches took all of his clothes, including his shorts. RT at 135-136. Petitioner testified that he did not take a prison made weapon into the holding cell. RT at 138. He also saw no weapon when he was in the cell. RT at 137-138.

Petitioner testified that he first heard about the weapon found in his cell after he was released from the holding cell and called back to the sally port gate. RT at 140. At this time, Officer Guches and Sergeant Hinrich showed him the weapon. RT at 141. Petitioner testified that Officer Guches did not draw his attention to something on the floor of the holding

cell. RT at 138.

On cross-examination, petitioner was impeached with his testimony from his disciplinary hearing regarding this incident. At this hearing, petitioner stated that Officer Guches had opened the door of the holding cell and asked him what was on the ground. RT at 146. At this hearing, petitioner also stated that Officer Guches kicked the weapon out of the cell and he never saw it again. RT at 146.

Petitioner's counsel recalled Officer Guches after discovering that a log stated that Officer Fields escorted petitioner to the sally port, rather than Officer Guches. RT at 167-168. Officer Guches testified that this entry was in error. RT at 169.

In finding petitioner guilty, the trial court made the following findings:

> I want to address a couple of points raised by Mr. Mahle.
>
> First of all, in review of People's exhibit 5 with respect to the proximity of cell 3 to cell 4: I would concur that the cells are side by side.
>
> However, the configuration of the cells themselves do not lend themselves to a situation where an inmate could readily pass an object or item from cell 4 once he is contained within cell 4 to cell 3.
>
> Based on the testimony that's been presented during the course of this trial it would appear as inmates were escorted into the sally port area, they were under constant and continuous observation by one or more officers.
>
> So if something had been passed from cell 4 to cell 3, it would have had to have taken place after the inmate was locked and secured in cell 4.
>
> And based on the configuration, it would not appear to be reasonable that an individual could in fact pass an item or object through the opened port of the cell 4 to cell 3.
>
> With respect to the log that was introduced. I believe Defendant's Exhibit C, I would recognize, and I do recognize that there are a number of apparent inconsistencies. Obviously, the court does not have before it, in terms of the manner in which this document was prepared, how accurate this document is other than the testimony of Officer Guches in terms of the other inaccuracies as he determines them to be.
>
> So I am not sure exactly what evidentiary value the log itself has, and how much wait [sic] should be given.

\\\\\

However, I would indicate that the only testimony that I have before me is I have the log before me. I do have Officer Guche's testimony with respect to at least three entries, his recollection of this incident would be in direct conflict with the log itself.

The relevancy of that conflict would relate to whether or not–not whether or not Officer Guches didn't search the cell before placing the defendant in, or was not–did not find the knife or place the knife somehow after Defendant Lang was removed from the cell.

The only relevancy of this log would be to contest the issue of whether or not Officer Guches was in fact the escort officer to Mr. Lang, whether or not he was the individual who was in fact the finding officer.

However, I would note that during the response to questions of both defense and prosecution, during the course of the defendant's testimony here, as well as the testimony during the course of the 115 that was introduced by the People by way of a prior inconsistent statement, uhm, I would find that, that if in fact there was such an issue, and if in fact Officer Guches was not the escort officer at the time this item was found, it would appear to me that issue would have been raised during the course of the 115, or it would have been raised during the course of defendant's testimony in this proceeding.

After careful consideration of the evidence presented both by the Defense as well as the Prosecution, primarily the testimony of the Officer Guches and Defendant Lang, the physical evidence presented, the photographs, the diagram, the weapon itself; I find the standard of proof beyond a reasonable doubt, I make the following findings:

I find defendant was a person confined in a penal institution. Mainly California State Prison, in this case California State Prison Sacramento;

That the item of evidence marked Exhibit 31-A constitutes a deadly or dangerous weapon within the meaning of Penal Code Section 4502(A);

Lastly, I do find by proof beyond a reasonable doubt Defendant Thomas Lang did possess that weapon while confined in said penal institution.

Although there's conflict in the testimony between the defendant and Officer Guches, I find that Officer Guches's testimony to be truthful and credible.

This finding is based upon the following: The content of his testimony, the character and quality of his testimony, Officer Guches's demeanor and manner while testifying, his apparent lack of motive and/or bias in this matter.

Lastly, I also find not withstanding the post-accident or post-accident injury, that Officer Guches is a competent witness and testified from apparent memory without reliance on notes or other aids to memory.

I find that the defendant's testimony in this matter was not reliable based upon the following:

    > Defendant's testimony here was in conflict with his previous testimony provided during his C.D.C. hearing.
>
> The testimony provided by Sergeant Hinrich and as testified to by the defendant at the C.D.C. 115 hearing directly contradicts his testimony here in court as to when he was first apprised of or became aware of the existence of the knife.
>
> This casts significant doubt as to the veracity of the defendant's account of this incident.
>
> Defendant, based upon the pendency of these charges, does in fact have motive or interest to be less than candid.
>
> Accordingly, I do find Officer Guche's testimony that he searched cell 3 prior to placing defendant into cell 3, and then discovering the weapon while the defendant was in the cell to be credible.
>
> The defendant was under constant observation of Officer Guches during that period of time.
>
> That he was in the sally port area, that there was no opportunity for others to place an object into the cell.
>
> The circumstantial evidence establishes beyond a reasonable doubt that defendant is guilty of the crime of Penal Code section 4502(a) and any other interpretations of this evidence would be unreasonable.

RT at 190-194.

Discussion

In the first amended petition, petitioner states that he is raising a claim that his conviction was not supported by proof beyond a reasonable doubt. The court construes petitioner's claim as alleging insufficient evidence to support the conviction based on the legal standard set forth below.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Under Jackson, the court reviews the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n.

11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could have reached the same conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The fact that petitioner can construct from the evidence alternative scenarios at odds with the verdict does not mean that the evidence was insufficient, i.e., that no reasonable trier of fact could have found the conviction scenario beyond a reasonable doubt.

> In reviewing the sufficiency of the evidence supporting a conviction, we search the record to determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir.1986). *The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict.* United States v. Fleishman, 684 F.2d 1329, 1340 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S. Ct. 464, 74 L. Ed.2d 614 (1982); United States v. Federico, 658 F.2d 1337, 1343 (9th Cir.1981), overruled on other grounds, United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc).

United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991)(emphasis added).

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination. Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

\\\\\

\\\\\

Petitioner was convicted of violating Cal. Penal Code § 4502(a) which provides,

> Every person who, while at or confined in any penal institution, while being conveyed to or from any penal institution, or while under the custody of officials, officers, or employees or any penal institution, possesses or carries upon his or her person or has under his or her custody or control any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, or metal knuckles, any explosive substance, or fixed ammunition, any dirk or dagger or sharp instrument, any pistol, revolver, or other firearm, or any tear gas or tear gas weapon, is guilty of a felony and shall be punished by imprisonment in the state prison for two, three, or four years, to be served consecutively.

The California Court of Appeal denied the insufficient evidence claim for the following reasons:

> Defendant and Officer Guches were the only witnesses at trial and credibility was the central issue. Under the defense theory of the case, the weapon was already on the floor when defendant entered the holding cell, it was passed from an adjoining cell, or Officer Guches put the weapon there. The trial court rejected defendant's theory and found "by proof beyond a reasonable doubt" that defendant possessed a deadly or dangerous weapon while imprisoned at California State Prison, Sacramento. The court expressly found Officer Guches's testimony to be "truthful and credible." It noted that defendant's testimony conflicted with his previous testimony at the internal Department of Corrections hearing.
>
> On appeal, defendant asks us to draw different inferences than the trial court drew from the trial testimony. He speculates that if the black handle of the weapon had been exposed, "Guches would not necessarily have seen the item if it was on the floor at the time [defendant] was placed in the holding cell." Defendant also cites Officer Guches's medical condition and defendant's testimony that Guches had a reputation for planting weapons on prisoners as reasons to distrust Guches's testimony. However, the trial court's findings are supported by "evidence which is reasonable, credible, and of solid value." (Johnson, supra, 26 Cal.3d at p. 578.) We will not second-guess the trial court's evaluation of the two witnesses' credibility.

Opinion of California Court of Appeal, pp. 4-6, lodged June 14, 2005.

In the instant action, petitioner makes the same arguments as were made in state court. Petitioner argues that Officer Guches was not a credible witness for several reasons. Petitioner argues that Officer Guches's head injuries made him an incompetent witness. Petitioner also argues that the fact that Officer Guches had been previously reprimanded for not searching a holding cell made his testimony that he searched petitioner's cell not credible. Petitioner also argues that the log report stating that Officer Fields escorted petitioner to the

holding cell made Guches's testimony that escorted petitioner incredible.

In reviewing the record, this court must defer to the factfinders reasonable credibility determinations. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). The trial court's finding that Guches was a credible witness despite his head injuries, his previous reprimand and the inconsistent report was reasonable.

Petitioner makes additional arguments in which he asks the court to re-weigh the evidence and challenging the credibility of Officer Guches. These arguments are not appropriately made in a claim alleging insufficient evidence in violation of the Constitution.

For example, petitioner argues that Guches gave conflicting testimony regarding when he searched the cell. Petitioner argues that in his report, Guches wrote that he inspected the holding cell after he put petitioner into it. At trial, Guches testified that he inspected the cell before he put petitioner into it.

At trial, Guches testified as follows regarding his report:

> Q: Okay, isn't it true that you put Mr. Lang in there–in the cell, closed the door without searching it. Isn't that true?
>
> A: No, it's not.
>
> Q: Okay. Do you remember specifically searching there?
>
> A: Yes, I do.
>
> Q: The way you wrote your supplemental report, uhm: Since I was closest to Lang during the escort, I placed him in the Holding Cell Number 3, period. Then you said, "I visually inspected the cell." That was your next sentence, wasn't it. Do you see that?
>
> A: Let me get to that point.

RT at 84-85.

Immediately after this testimony, the court session ended for the day. The next day, Officer Guches testified that he looked into the holding cell before petitioner entered it. RT at 94.

\\\\\

Officer Guches's testimony regarding his supplemental report does not indicate that he wrote in the report that he searched the cell after placing petitioner into it. The fact that he wrote "I visually inspected the cell" after he wrote "I placed him in Holding Cell number 3" does not necessarily mean he inspected the cell after he placed petitioner into it. The trial court's apparent decision to deem Officer Guches's trial testimony credible regarding when he searched the cell, i.e. before he placed petitioner in the holding cell, was not unreasonable.

Petitioner argues that Officer Guches's testimony regarding his ability to see the weapon on the floor of the holding cell was not credible because there was evidence that the floor of the cell was dirty and dark. On July 19, 2005, the court granted petitioner's motion to expand the record to include photographic exhibits from petitioner's trial. In the motion to expand, petitioner requests that the court view exhibit 7 which shows the cell, the cell to the door and the solid metal bottom of the cell. Petitioner argues that this photograph shows that a correctional officer could easily have missed seeing the object on the floor of the cell.

The court has reviewed exhibit 7 which is a photograph of the holding cell. While the floor of the holding cell is gray and black, it is not so dark and dirty that a correctional officer would have missed seeing a six-inch inmate manufactured weapon laying on the floor. As discussed above, part of the weapon was wrapped in cellophane which appeared white to Officer Guches. This portion of the weapon was less likely to blend in with the colors of the holding cell floor. For these reasons, the court does not find exhibit 7 to be persuasive evidence that Officer Guches could not have seen the weapon when he visually inspected the holding cell.

Petitioner also suggests that another inmate could easily have dropped the weapon into holding cell 3 through the slot in the door. The trial court rejected this theory as well as petitioner's theory that Officer Guches planted the weapon. As stated above, in reviewing a sufficiency of evidence claim, the relevant inquiry is not whether the evidence excludes every hypothesis of guilt, but whether the trier of fact could reasonably arrive at its verdict. For the reasons discussed above and by the California Court of Appeal, the court finds that the trial court

reasonably rejected these theories when arriving at its verdict.

For the reasons stated by the California Court of Appeal, the court finds that there was sufficient evidence presented at trial so that a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. Because the denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority, the petition should be denied.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to lodge the photographic exhibits submitted by petitioner; at the conclusion of these proceedings, petitioner shall motion the court to return these exhibits to the Sacramento County Superior Court, pursuant to the August 25, 2005, order of Sacramento County Superior Court Judge Hom, attached to petitioner's stipulated request for order transferring the exhibits.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 03/04/08

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

lang.157